IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

DECEMBER 1998 SESSION

FILED

March 2, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 01C01-9804-CR-00151 |
| | ) | |
| | ) | Putnam County |
| v. | ) | |
| | ) | Honorable John Turnbull, Judge |
| | ) | |
| TRACY HAMILTON, | ) | (Theft of property valued under $500) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Randy Chaffin
100 S. Jefferson Ave.
P.O. Box 529
Cookeville, TN 38503-0529
(AT TRIAL & ON APPEAL)

Craig P. Fickling
9 S. Jefferson, Suite 101
Cookeville, TN 38501
(ON APPEAL)

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
        and
Daryl J. Brand
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243-0493

William Edward Gibson
District Attorney General
        and
Lillie Ann Sells
Assistant District Attorney General
145 S. Jefferson Ave.
Cookeville, TN 38501-3424

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The defendant, Tracy Hamilton, appeals as of right following her conviction by a jury in the Putnam County Criminal Court of theft of property valued under five hundred dollars, a Class A misdemeanor. She was sentenced to eleven months and twenty-nine days with forty-five days to be served in the county jail and the remainder to be served on probation. She was fined one thousand dollars. The defendant contends that the evidence is insufficient to support her conviction and that the trial court erred in sentencing. We affirm the judgment of conviction.

At the trial, Sharlene Lawson testified that in March 1996, she worked in loss prevention for the Wal-Mart in Putnam County. She said that on March 27, 1996, she saw the defendant and Alice Mertz, a codefendant, enter the store. She said the defendant put her purse in the small part of a shopping cart, and she and Mertz went to the Women's Department. She said the defendant and Mertz picked up two dresses, placed them over the purse in the cart, and went to the Electronics Department. She said that electronics are in an enclosed department. She said the defendant and Mertz picked up five videotapes and placed them in the small part of the cart on top of the clothes. She said the women went to the end of the electronics aisle, then went up and down the aisle three times. She said she lost sight of the videotapes and could see only the clothes. She said the defendant and Mertz pushed the cart through the store, and she followed them until they stopped in an aisle. She said she saw Mertz open her jacket and drop the videotapes into the defendant's purse.

Ms. Lawson testified that she had called for members of management to assist her. She said that when two members of management walked by the defendant and Mertz, the defendant put her purse on her shoulder, Mertz closed her jacket, and the women walked away from the cart. She said she told management that she had

2

seen concealment and wanted to stop the defendant and Mertz. She said the defendant and Mertz were walking fast at this point. She said she stopped the women and told them to return the videotapes. She said the defendant told her she was going to put the videotapes on layaway. She said the defendant started to cause a commotion, and she took the women to the store office and called the police.

On cross-examination, Ms. Lawson testified that the dress that the defendant picked up would have fit the defendant. She said that it is normal for shoppers to put things in their carts, and there is nothing wrong with shoppers moving between the departments. She said that it is not uncommon for people to put items in their carts then leave the carts. She said that when she confronted the defendant, the defendant was approximately one hundred feet from the layaway counter. She said she remembered that during the preliminary hearing, she was asked to fit the videotapes into the defendant's purse, and she had a difficult time making them fit.

Tammy Dodson, a Wal-Mart employee, testified that Ms. Lawson asked her to help watch the defendant and Mertz. She said she waited for the women to come out of the Electronics Department and when they did, she saw clothes on top of their cart, but she did not see any videotapes. She said she followed the women through the store until they stopped in the Housewares Department. She said she saw the defendant open her purse and Mertz open her coat. She said that when Mertz opened her coat, the defendant began fumbling with the top part of the cart. She said that when she and Lawson approached the women, the defendant walked briskly away from the cart.

On cross-examination, Ms. Dodson testified that videotapes are not supposed to be taken out of the Electronics Department, and there is a sign in the store that states this policy. She said that videotapes should be paid for in the Electronics

3

Department. On redirect examination, she said that when she and Ms. Lawson confronted the defendant, the videotapes were in the process of coming out of the defendant's purse.

Virginia Wilkerson, a Wal-Mart employee, testified that she saw the defendant and Mertz come out of the Electronics Department pushing a cart with clothes on top of the cart. She said she saw Mertz open her coat, and the defendant was fumbling with her purse. She said that when Ms. Lawson and Ms. Dodson approached the women, the defendant put her purse on her shoulder and acted like she was going to run. On cross-examination, she said she never saw the defendant put the videotapes in her purse, and the defendant walked away quickly when confronted by Lawson and Dodson.

Michael Hannah, an assistant manager at Wal-Mart, testified that he saw the defendant and Mertz in the Housewares Department. He said that when he walked by the women, he did not see any videotapes, and the women walked away in different directions and looked anxious. He said that after Ms. Lawson confronted the defendant, he saw the videotapes in the defendant's purse. He said the purse was open, and the tapes were sticking out of the purse.

Sam Harris testified that he represented the defendant at the preliminary hearing. He said that Ms. Lawson was the only witness to testify at the preliminary hearing, and she identified a purse the defendant brought to the hearing as the purse the defendant was carrying at Wal-Mart on the day of the incident. He said he asked Ms. Lawson to put the videotapes in the defendant's purse, and she had to struggle to make them fit. He said it took Ms. Lawson between twenty seconds and a minute and one-half to get the videotapes in the purse. He said that Ms. Lawson had to use both hands, and it was a tight fit.

4

The defendant testified that she and Alice Mertz went to Wal-Mart, and each picked out a dress in their respective sizes before going to the Electronics Department. She said she had two children and collected Disney videotapes. She said she was looking for the Pocahontas videotape that day. She stated she did not find the videotapes in electronics but rather on a display near the checkout. She said she picked up three videotapes and put them in the cart beside her purse, then she and Mertz went to the Housewares Department. She said she decided to put the videotapes on layaway because she did not have enough money to pay for everything. She said she unzipped her purse to see how much money she had, and Mertz was fumbling with her jacket pocket to see how much money Mertz had. She said Mertz was eating a candy bar and kept taking the candy bar out and putting it back in her jacket pocket. She said she and Mertz were suddenly bombarded by security, and she picked up the videotapes and her purse. She said she left her cart sitting in the aisle because she was checking to see if she had enough money. She said she did not intend to steal the videotapes. She said Ms. Lawson ripped her purse at the preliminary hearing by trying to make the videotapes fit in it.

On cross-examination, the defendant testified that when she went to the store office, she requested that the police be called. She said she refused to give the store personnel any information because she had done nothing wrong.

In rebuttal, the state called Sharlene Lawson. Ms. Lawson testified that there were no videotapes located outside of the Electronics Department on the day the defendant was in the store.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support her conviction for theft. Specifically, she argues that the evidence presented is

5

circumstantial, and there is no proof that the defendant intended to steal the videotapes. The state contends that the evidence is sufficient to support the conviction.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Viewing the evidence in this light, we hold that it is sufficient. The crime of theft of property requires proof that the defendant knowingly obtained or exercised control of property without the owner's consent and with the intent to deprive the owner of the property. T.C.A. § 39-14-103. The proof showed that the defendant and Mertz picked up videotapes and placed them in their cart on top of the clothing they had previously selected. They stopped the cart in the Housewares Department, and Mertz opened her jacket and deposited the videotapes into the defendant's purse. When Wal-Mart employees walked by the defendant and Mertz, the women left the cart in the aisle, and the defendant took her purse and quickly began to walk away before she was apprehended. Although the defendant claims she did not intend to steal the videotapes and was taking them to the layaway counter, the jury was entitled to discredit her testimony and accredit the testimony of the state's witnesses. The evidence is sufficient to support a finding beyond a reasonable doubt that the defendant knowingly obtained or exercised control over the videotapes with the intent to deprive Wal-Mart of them.

## II. SENTENCING

The defendant contends that the trial court imposed an excessive sentence and that she should have been granted full probation. The state responds that the defendant was properly sentenced.

At the sentencing hearing, Tim Cook testified that he prepared the defendant's presentence report. He said the defendant has a 1995 conviction for theft and was on probation for that offense when she committed the offense in the present case. He said the defendant told him that she does not work because she has asthma and that she receives disability payments. Cook said the defendant has two children.

Tammy Dodson testified that the year before the sentencing hearing, the Wal-Mart in Putnam County lost approximately five hundred twenty-four thousand dollars to theft. She said she was familiar with the defendant because management had suspected the defendant of shoplifting from Wal-Mart on a previous occasion. She recommended that the defendant receive the maximum sentence. On cross-examination, she said that the value of the videotapes was around one hundred dollars.

Michael Hannah testified that shoplifting affects every employee at Wal-Mart because the employees receive a bonus based on the store's profitability. He said that shoplifting results in higher prices for consumers.

The presentence report reflects that the then twenty-seven-year-old defendant has a prior conviction for theft valued under five hundred dollars in 1995 and that she was on probation for that offense when she committed the offense in the present case. The report reflects that the defendant quit school in 1986 and has had no other education or training. It states that the defendant said she has asthma and draws disability, thus she has no work history.

In sentencing the defendant, the trial court applied the following enhancement factors, as listed in T.C.A. § 40-35-114:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> (2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;
>
> (8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community.

The trial court found the following mitigating factor, as listed in T.C.A. § 40-35-113:

> (1) The defendant's criminal conduct neither caused nor threatened serious bodily injury.

The trial court also considered in mitigation the fact that the defendant has small children at home and has health problems. See T.C.A. § 40-35-113(13). In denying full probation, the record indicates that the trial court considered the need to avoid depreciating the seriousness of the offense, the need for deterrence, and the defendant's untruthfulness at trial.

Generally, appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d), -402(d). As the Sentencing Commission Comments to T.C.A. § 40-35-401(d) note, the burden is now on the appealing party to show that the sentence is improper. We note that there is no presumptive minimum sentence provided by law for misdemeanors. See, e.g., State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). However, the sentence must comply with the misdemeanor sentencing requirements of the Criminal Sentencing Reform Act of 1989. See State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995).

The defendant contends that her sentence is excessive and that she should have received full probation. However, her only argument is that there is little

evidence to support the trial court's conclusion, while the evidence supports her position that a period of incarceration would not serve the purposes of the 1989 Sentencing Act. She does not explain how the trial court erred nor why her sentence does not serve the purposes of the Sentencing Act. The record in this case reflects that the trial court followed the requirements of the Sentencing Act. The applicable enhancement factors more than justify the sentence imposed. The defendant has failed to show that the sentence is improper.

In consideration of the foregoing and the record as a whole, we affirm the judgment of conviction.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
John H. Peay, Judge

_____
Norma McGee Ogle, Judge

9